and the Wayne County Department of Health, Women's, and Community Wellness at all. The program is not to exceed 15 minutes of silence. 15 minutes will be shared by the panel. Mrs. Olavera is with you now. Good morning. Good morning. May it please the court, my name is Kate Olavera and I represent the appellant Tara Nikolao. May I reserve two minutes for rebuttal? You may. The district court made an overarching error that colored the rest of the opinion. This case is not about mandatory vaccination requirements. The state of Michigan has determined that parents have the right to a religious waiver. It's not a constitutional requirement and that is not in dispute. This case is about whether the government can instruct people in their own religious beliefs with the idea to change those religious beliefs to comply with the state's purpose. Another way of putting it is to clarify, which is what I think the government intended. You have a right just to say, I don't want a vaccination for my child. Period. Your client chose to talk about religion and doesn't the state at that point have a right there to say, you know, for example, if you're Christian Science, you could say, you know, my church doesn't believe in injections. And couldn't the state say, you know, even if you get the injection, that won't affect your membership in the church. Wouldn't that be a valid discussion? That's not at all the situation here. My client has no right to not vaccinate her children if she wants to receive the public benefits like public school in this case. The constitution has stated that parents, I'm sorry, the Supreme Court has stated that parents do not have a constitutional right to a religious. But under the statute, wouldn't my example of Christian Science be? That's not what happens here. He's asking a hypothetical question. And so the answer isn't that's not our case. It's what's the answer to his hypo? The answer to your hypothetical is no. The state has no authority, no right and cannot under the establishment cause tell an individual what will or will not affect their membership in their church. That is a matter for their priest and their pastor. That is not a matter for the government. And I think the facts in this case demonstrate exactly why. Because in this case, the state's documents that were presented to Mrs. Nicolau here contained a statement that was misattributed to the Pope. That called her personal religious beliefs a cooperation with evil. And that's exactly why the state has no business. The Pope never said that. The Pope never said anything along the lines of that. Pope Benedict remained silent on vaccinations. So that's exactly the problem here is that this isn't about mandatory vaccinations. This is about religious instruction and how far a state or a government can go in instructing citizens in religion. And especially in this instance where it's. Well, of course, when she uses religion, she's not talking about avoiding her own injection. She's talking about avoiding a third party's injection. And doesn't, on that basis, the state have some right to ask her about the religious beliefs? In some courts, in some circuits where the statutes allow for or require a sincere religious conviction, courts have delved not into the substance of the religious beliefs, but into the sincerity of the religious beliefs. But that's not at all what happens here. And Michigan law has a mandate that a parent, if they assert in writing that they have a religious objection, they shall receive that objection. And furthermore, well, the state can potentially inquire into the sincerity of beliefs. A state cannot tell an individual that her religious beliefs are wrong. And that's what's happened here. And the district court below held that because there's no constitutional right to a vaccination exemption, basically that the constitutional provisions don't apply to the statutory right Michigan created. But that would then mean that Michigan could only allow exemptions for people who were born in the United States. And naturalized citizens wouldn't be allowed that exemption. We're not going to give driver's licenses to Catholics. Exactly. And especially when you consider that the federal constitution, if we're looking at federal constitutional rights, that enumerates the powers of the federal government. The state, I mean, the powers reserved to the state are broad and not mandated in the constitution. It's reserved, everything not in the constitution is reserved to the states. So this would also expand it to any discretionary function of the state, such as higher education. There is no constitutional right to higher education. But that does not mean that when a state chooses to exercise that discretion, that it can do so in an unconstitutional manner because through the 14th Amendment, the First Amendment does apply. All right. So, well, just remind me, what relief are you seeking, injunctive or damages or both? We are seeking injunctive relief. We're asking that the defendants be prohibited from using this religious form that constrains, I mean, it's full of religious interpretation. Which defendant, and you have several layers, which defendant put the form on the website as responsible for the form? We would like to find that out in discovery and perhaps amend our complaint. Whose website was it on? It's on the Michigan Department of Health and Human Services website. Okay. That form, is that the one that attributed all this stuff to Pope Francis or something? To Pope Benedict. Oh, Benedict. Yes. Very unlikely Pope Benedict was saying that stuff. I read it and I was shocked and I had to do research because it didn't seem like him. Francis, who knows? Yes. But, so it's actually no longer on the website. A few days after, there's a time gap in the Wayback Machine where you can look at the dates of the website, but shortly after the complaint was filed, that document disappeared from the Michigan Department of Health and Human Services. Okay, so you want an injunction not to sort of harangue people this way? Yes. And then damages, I mean, how are you going to get damages against anybody here? We're just seeking nominal damages in recognition of the violation of Mrs. McAllow's constitutional rights. Okay, can you separate, I mean, you have an Establishment Clause claim violation and a free exercise claim violation, right? Yes. You seem to be confusing the two right now. But the Establishment Clause claim is governed by Lemon, isn't it, the Lemon test? Yes, Your Honor. Okay, and the prongs of that is the statute must have a secular legislative purpose is the first one. And the other ones, which part of the Lemon test do you say violates the Establishment Clause? We believe that every prong of the Lemon test is violated. Okay, I mean, the secular purpose here is not to further religion, but the secular purpose here is to encourage parents to vaccinate their kids. It's a health purpose, is it not? So I don't see a violation there. In this Court's decision in Ashbrook, a judge posted the Ten Commandments. And while principles in the Ten Commandments, such as thou shall not kill, are perfectly legitimate. You think that this thing is religious-based, that the legislature, by requiring educational information to give to parents who object to vaccination, that that really is religious, it's a religious purpose, that the Michigan legislature was furthering a religion? Well, this wasn't done by the Michigan legislature. Or it was done by the Health Department. I'm sorry, it's a regulator. Yes, Your Honor. And so I believe your question is going to a facial challenge to the new administrative rule. It's very dubious that the reason they have this form, like Judge Griffin says, is because they have it out for religion. It seems much more likely that they just want people to get vaccinated. I don't know why the Department of Health would have religion preferences, really. If they do, I don't know which one. I mean, their means are one thing, but the purpose seems to just get people vaccinated. But the means and the context, the purpose of using a papal statement, even if it were a true papal statement, is to encourage individuals to comply with the Pope's statement. And so while vaccinating children and health and safety are perfectly legitimate purposes, if they go about it in saying, in discussing potential risks, risks to vaccinations, or risks for not vaccinating your children, that's a legitimate purpose. But here, just as thou shalt not. See, the purpose is to persuade them of the value of vaccinations. And I'm sure they have. I mean, you say the statement wasn't by the Pope. It was somebody else in the Vatican. But I'm sure they have statements of scientists and noted doctors and everybody else that say vaccination is good. We encourage to do. And they also throw in religious leaders to show that the overwhelming support is for vaccination, so that the purpose isn't to encourage somebody to go with the Pope's view. The purpose is to encourage the view that vaccinations are a good thing, and the Pope is just thrown in there with everybody else. I mean, that's what it looks like to me. But the state cannot set forth religious authorities as figures. We can't cite religious authorities anymore? No. It cannot encourage people to follow specific religious practices. And that's what they're doing when using the religious. The purpose is not to do that. It's just to show that there's overwhelming support for vaccination. It's more entanglement. Well, okay, we go to different parts of Lebanon, I guess, for that. I do want to emphasize that when looking at the Ten Commandments, thou shall not kill is a perfectly legitimate purpose for government. Thou shall not kill because the Ten Commandments say thou shalt not kill is not a secular purpose. I don't know if you want to be making that argument, really. All right, tell me how you – say you get past the first prong of a limit. How do you get past the other ones? The second prong is whether it inhibits or advances religion. And in this case, the government setting forth the favorable view that certain religious figures – and there is wide discrepancy. If you actually look at the – it's not the Vatican. It's the Pontifical Council for Life, which is Exhibit D to the complaint. This is an extremely nuanced position of the Catholic Church that in no way condemns parents who choose not to vaccinate their children. So it's advancing a division in Catholic parents' teachings and Catholic parents' religious beliefs that the church does not have a definitive stance on and saying this is the position the state is getting behind, the position that using vaccinations derived from aborted fetal cells is the right way to go. And parents, those who choose not to use, who believe based on sound Catholic doctrine that using vaccines derived from aborted Catholic fetal cells is a sin, the church doesn't agree with you that you are wrong. The state doesn't agree with you. The church doesn't agree with you. In the time that you have, I'd like to ask you a question about your free exercise claim. Is special disabilities, as the Supreme Court used that term in Smith, is that a term of art or what does that mean in your view? What's the legal definition? The legal definition of special disabilities? Yeah. I'm sorry. I can follow up with a brief. No, that's okay. All right. No, that's all right. Okay. Well, anyway, we're out of time. Thank you. May it please the Court, Darren Fowler from the Michigan Attorney General's Office. On behalf of the athlete Nick Lyon, I'll be utilizing 13 minutes of the response time. Mr. Stella, for the Wayne County defendants, we'll be using the other two. Given my visual disability, I'll ask if the Court just kindly advise me when my time is up. I will. Thank you, Judge Griffin. And Judge Griffin, one of your questions to plaintiff's counsel really got to the core of one of the big problems with Appellant's case here. Appellant is going well beyond just making an argument about a misattribution of a quote to the Pope here. The Appellant is asking for the invalidation of the entire educational process that underlies this suit. That is on a facial challenge of the administrative rule that the DHHS promised. I mean, the administrative rule really doesn't, certainly doesn't spell out any of the conduct that they're complaining about here. Right? Not at all. It simply advises that the folks, the parents who want to get exemptions, be it for religious reasons or other reasons, need to appear before the local health department and attend one of these educational sessions. And the rule says to learn about the risks of not being vaccinated, the benefits of being vaccinated on the individual and community level. Do you think that the nurses kind of went rogue on all this religious sort of advocacy that they were trying to do, allegedly? I think that the conduct of the nurses as alleged in the complaint is probably a little bit more aggressive or inconsistent with what is actually spelled out in the note to the local health workers that is included as exhibit B and really is, you know, what plaintiff's counsel was addressing in her statement. If you look at the first page of that note, there are bullet points at the top. And the third bullet point talks about people have the choice to have their own religious beliefs and make their own health care choices. The fourth bullet point emphasizes that the key to the conversation with parents is respecting the religious beliefs. So as the process was designed and promulgated in this note that, yes, it has been removed from the website. It's not out there anymore because a concern was raised with it. But the note itself did not structure a conversation that was going to impede upon the religious beliefs of the plaintiff or anyone else. So the claims here for this kind of injunctive relief on the face of these documents is inappropriate. I want to emphasize. I mean the facial claims. The facial claims. It seems like this alleged sort of hectoring about what the Catholic Church required, it seemed like that's just completely outside the scope of what your note or whatever that document specifies as to what the parent should be told in one of these educational sessions. Is that accurate, do you think? I don't disagree with that assessment. Okay. Judge Sir Heinrich, I think, raised an interesting point in that at some point the plaintiff also chose to engage and have an ongoing discussion and could have simply articulated, you know what, I'm not going to talk about religion at all. I'm entitled to an exemption for any reason in the world, so give it to me and I'm out the door. So there is, you know, some dialogue that happens, and, you know, we can only read between the lines of the complaint. And obviously we have to accept it as true here. Which is what happened here. The exemption was not for religious reasons but for the catch-all, right? The exemption was simply the exemption. There is no difference between an exemption that is for religious purposes versus one that is for other purposes. Okay. I thought they were arguing that they got the exemption but for the wrong reason or something. The complaint alleges it that way, but that is why both parties presented to the district judge, as part of the briefing at the district court level, the actual exemption form itself. As a document that has been described in pleadings, being considered within a 12B motion as attendant to it. The actual one here? The actual form attached to the district court briefing. It indicates that the mom is being granted the exemption and the health worker has written in, mom wants child to have natural immunity, I believe is how it's phrased. The way the complaint reads, it suggested that there may be like a separate form for the religious person, people seeking it for religious reasons, or maybe that there were different boxes on the form that needed to be checked. Checked religious reasons. The form is not set up that way. The worker, the health worker, gave the exemption. The health worker wrote mom wants child to have natural immunity, which in and of itself is neither an explicit acceptance or rejection of a religious reason for wanting the exemption. It's actually consistent with the petitioner's beliefs, isn't it, that she shouldn't have foreign chemicals, not chemicals, but foreign substances in her body, her child's body. That's kind of for religious reasons as well, I think. Correct. The reason that this particular mother does not want the vaccination is that in her religious views, in the eyes of God, that this kind of unnatural substance should not be entering the body. So, yes. So it's consistent with the religious objection, even though it, okay. Correct. Which, and because this exemption was granted, gives rise to the argument that there is no standing here for the plaintiff to be bringing this claim. Even the plaintiff's counsel was reluctant to acknowledge that most of the relief requested through the application. And that's a tricky issue, though, because if, hypothetically, the conduct here was a substantial burden on her ability to freely exercise her religion, then that itself would be a legal injury. I mean, it kind of depends on the merits in this case. There is also, though, Judge, the line of case law applying to the vaccination situations, recognizing that this is, you know, there's an important public health interest here. Courts have not recognized free exercise and establishment clause challenges to the vaccination process. They have not allowed. Well, that's, but that's, you know, that's a different claim than what they're making here. I mean, that sounds like a claim where the State doesn't allow them at all, and somebody wants to break through that. Here it is, the State is allowing religious objections, or objections generally, but the plaintiff's claim, the State has singled out this plaintiff for discriminatory treatment based on her religion. So it would be like there's no constitutional right to a driver's license, but that doesn't mean you can deny it to a certain group of Catholic believers. That's kind of what we have here. Even viewing it that way, though, there is a separate point that can be gleaned from the United States Supreme Court's recent opinion earlier this year in town of Chester, New York, which was cited in plaintiff's reply brief. There, Justice Alito, writing for a unanimous U.S. Supreme Court, emphasized that a plaintiff has to demonstrate standing for every claim and every request for relief in a complaint. But, Mr. Fowler, aren't the standards of standing different for a free exercise claim and an establishment claim? I mean, I would agree with you for free exercise, they must demonstrate some coercion or chilling, some effect on the activity of exercising religion. But the establishment clause standing jurisprudence doesn't require that, does it? I mean, coercion or chilling is not part of that. I think it would be an overstatement to say that the establishment clause case law doesn't have that same requirement. There is a line of cases that plaintiffs have certainly highlighted, Ashbrook and so forth, that involve public displays. There's, you know, another line of case law involving legislative speech where, yes, there is a certain kind of latitude or special device for standing that have been crafted. But here, I want to return to Valley Forge, Justice Rehnquist has a more thorough discussion of standing after the portion we quoted in our brief. He emphasizes, he has a paragraph, it's kind of a neat one, that says we don't mince words when we say that standing is a complicated doctrine that has, you know, you can't explain it in a sentence or a paragraph. A lot of special kinds of decisions have been crafted for different circumstances. Rehnquist goes on later in the opinion to say, and I quote, the standing requirement focuses on the party seeking to bring a complaint before a federal court not on the claims he wishes to adjudicate. That's true. And it is claim by claim. We don't all do it in gross. We've said that before. So as applied to this case, the particular question here is, what is the impact on the plaintiff? Not the fact that an establishment clause or free exercise clauses may be on the table here. This particular plaintiff had a conversation that she was uncomfortable with, yes. But at the end of the day, this plaintiff got the exemption she walked in that door to get. But it does seem odd. I mean, let's say, I mean, it seems like she was subjected to a harangue here. And it is pretty offensive just, you know, in a colloquial sense when you read at least how aggressive the nurses allegedly were and sort of how officious they seem to be in the complaint. But, I mean, so it would be strange if that very same conduct is not violative of anything here because this plaintiff did not yield to it. But, say, somebody who comes in a week later subjected to the very same conduct and caves in and says, okay, you know what, okay, fine. I mean, they just can't take the pressure. They feel this pressure from these people. And they abandon the thing and they go get vaccinated. And so the very same conduct is a claim in one instance and not a claim in another. That seems a bit odd. It is a violation of the Constitution at one and not the other. Appreciating, you know, the view your question suggests, there may be problems with what happened here, but they do not rise to a constitutional level, at least not First Amendment constitutional. Well, I mean, aren't there cases in the free exercise area that say the State can't impose a substantial burden on the exercise of religion? Yes, there are cases in that. And, I mean, isn't being subjected to this kind of pressure when you try to exercise that right, your religion, couldn't that be a substantial burden? Now, what this plaintiff was subjected to was exposure to ideas she disagrees with. This Court did. Well, but, you know, it wasn't kids being taught about evolution or something. I mean, this was not just, you know, putting the idea out there, but also pressuring her with the direct and immediate object, allegedly, of preventing her from exercising her, acting according to her faith. That's what they say. That seems different than just simple exposure. It is troubling, but appreciating the point you also made there, this is not a child. This is an adult who was capable of not resisting, I guess, the kind of pressure that she, you know, asserts was being asserted on her. Yeah. This particular plaintiff did not suffer an injury. And while there may be a hypothetical person who, under the same circumstances, might have reacted differently to that scenario, that may be true, but that is not the case for this plaintiff and the question of her standing. All right. Thank you, Mr. Fowler. All right. Mr. Fowler, your red light is on now, but do you have any questions, Judge Reinrich? Do you have anything to wrap up, or are you done? I will yield the floor. Okay. Thank you. Very good. Thank you. Are we out of time for my questions here? Two minutes. Two minutes. Okay. Thank you. Good morning. Good morning. May it please the Court, my name is Davide Stallon. I'm here on behalf of Carol Osterberry, Dr. Hamami, and the Wayne County Department of Community Health. I'm sorry, I'm a little under the weather today. Sorry for stepping out there. Don't sneeze in our direction. I'll try to stay as far back as I can. I just wanted to emphasize a couple of points. Wayne County is in a different position as the state is in this case. This is not our policy, not our rule. This is a mandate that the state tells all counties, Wayne County is in the same position as every other county in the state. The county says, you know, if people want to get vaccination exemptions, here's a form they use. It's a new form we're going to use. It's just a one-page form. There's nothing controversial on it. And another thing that the state provided was a script, a larger document that says, look, when people come in, per our order, if people come in and have certain objections to vaccinations, this is what you say. And so if you read the document, it's a lot about science. It's mostly about science. So it's like, well, you know, something that people often complain about is, well, I think my child might get autism. Now, that is a huge thing that people think happens. And so the state says, look, if somebody says this to you, say this back to them. If somebody says, well, I don't think that Buddhists believe in it, and said, if somebody says that to you, say this back to them. So it's a point that you're not responsible for what these nurses did. Well, I mean, I'm not saying, well, the posture of the case currently, right? So we have the supervisory employees who have no personal involvement, so we think they should be out, right? Carol Osterberry, Dr. Hammami, in their individual capacities, don't know who Tara Nicolaou is. She had no involvement. In terms of supervisory liability under 1983, you need to have some involvement. There's no respondent superior. And for Wayne County, then we have to talk about Monell, right? Because we're talking about 1983. So we've got to talk about a policy attributable to Monell. Well, that's our point. And I see that I'm out of time. Could I kind of? Almost. Yeah. Wrap that up. Go ahead. Yeah, I mean, in terms of the way this case is situated now, is that the nurses aren't defendants. They're not in the case. They don't represent them. They've not been named. And, you know, the three defendants that exist for me today, you know, are two individuals who have nothing to do with Tara Nicolaou. And the county, which has to be, the only way you get to the county is a Monell claim. And the Monell claim would say that the county has to have some policy independent of what the state is ordering. It's something that we have control over. And there's no allegation in this case of that stuff. Thank you. All right. Two minutes rebuttal, I guess it was. So first I want to address that there was Mrs. Nicolaou did attempt to avoid engaging. She kept telling them she has a religious exemption. She told the nurses. And she expressly stated that she didn't want to get engaged in a back and forth. The nurses repeatedly persisted asking what her actual reasons for objecting to her, telling her no religions, objective vaccinations. So she attempted to take herself out of the situation and say the state says I'm entitled to a religious exemption, please give me one. And she was not allowed to do so. Second, well, currently the Michigan exemption form is the same for both the philosophical or religious exemption. States are getting rid of it. And you can see this in case law we cited, Lewis and Berg, that when the states take away the philosophical or other objection, which there's a movement towards, they then inquire into the sincerity of religious objections. And when your past acts, so if your past form doesn't say religious, they then question your current request for a religious exemption. So while currently in Michigan there's no difference, in the future that distinction and that she wasn't allowed to write religion. It doesn't sound like it's going to pass the Lujan test, that particular theory of injury. Well, as to injury, the Sixth Circuit has expressly ruled that there's no requirement that a plaintiff must change her religious beliefs or affirm an objectionable information because such a rule would impose an extra penalty on individuals already alleged to be suffering a violation of their constitutional rights. That Mrs. Nicolau is a knowledgeable Catholic and has extreme fortitude does not negate the fact that her constitutional rights were violated here. Because the requirement for violation of the free exercise clause here isn't changing your beliefs. It's if the state compels you to. Compulsion doesn't mean compliance. There's a difference. And here she was. They pulled this form. They're not doing it anymore. And whatever defendant had the form pulled the form. The nurses aren't in the case. The nurses may have been sort of ultra vires in what they were up to. It's hard to see what the basis for an injunctive relief would be here as to these defendants. Well, just because the form isn't on the website anymore doesn't mean it's not being sent to the local health departments. You don't allege that it is, do you? We allege that the health departments are using this form. The Michigan Department of Health and Human Services makes this form available. But there's no mandate that the health departments use this either. So there is a policy. Do you have a position in the litigation in its current posture as to whether the department is still using that form? We do not. As alleged at the time of our complaint, they were using the form. But do you have a position as to now? As to now, we have no way of knowing that. We didn't get to discovery. And she still has the claim for nominal damages for the intense inquisition into her religious beliefs. Any further questions? Nope. Thank you. Thank all of you. Case will be submitted.